UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :        Chapter 13

SUSAN MAE BOATES                               :

                        Debtor                 :        Bankruptcy No. 05-17077F

................................................

MEMORANDUM

................................................

Before me is a motion filed by Gilpin, Van Trump & Montgomery, Inc.

("Gilpin") seeking to annul the bankruptcy stay pursuant to 11 U.S.C. § 362(d)(1).  Gilpin

contends that the debtor is ineligible for bankruptcy relief and also maintains that the

instant chapter 13 petition was filed in bad faith.  The debtor argues to the contrary and

opposes the relief sought.[1]

After an evidentiary hearing, the following facts were proven.


I.


On December 18, 2003, Ricky Leo Boates and Susan Mae Boates filed a

joint voluntary chapter 13 petition, docketed at Bankr. No. 03-38707.  Ex. D-1.  Mr. and

Mrs. Boates filed this bankruptcy case to prevent the foreclosure of their home, located at

---

[1]The standing chapter 13 trustee, upon hearing the evidence and the arguments of
counsel, expressed his opinion that Gilpin is entitled to the relief it seeks.

1024 Langley Street, Trainer, Pennsylvania.  Ex. M-4, ¶¶ 2, 4.  At the time of their 2003

bankruptcy filing, Gilpin held a mortgage on the Boates' residence.[2]

On October 25, 2004, Gilpin filed a motion to terminate the automatic stay,

alleging that Mr. and Mrs. Boates had fallen behind in their post-bankruptcy mortgage

payments.  Ex. M-4, ¶ 5; Ex. D-1 (entry # 45).  Also pending at that time was the chapter

13 trustee's motion to dismiss the case.  Ex. M-4, ¶ 5; Ex. D-1 (entry # 44).  The trustee's

motion, Ex. D-1 (entry # 26), alleged that Mr. and Mrs. Boates were delinquent in plan

payments and had failed to file a viable chapter 13 plan.

On November 5, 2004, Mr. and Mrs. Boates moved to voluntarily dismiss

their chapter 13 case, pursuant to 11 U.S.C. § 1307(b).  Ex. D-1 (entry # 47).  This

request was granted by an order dated November 9, 2004.  In addition, and in accordance

with 11 U.S.C. § 109(g)(2),[3] the order barred Mr. and Mrs. Boates from filing any further

bankruptcy cases for a period of 180 days.  See, e.g., In re Hogan, 2004 WL 2806206,

(N.D. Ill. 2004); In re Munkwitz, 235 B.R. 766 (E.D. Pa. 1999).  As a result, neither Mr.

nor Mrs. Boates was eligible to file a bankruptcy petition until May 9, 2005.

---

[2]In the bankruptcy schedules filed in the 2003 case, the debtors listed Gilpin as
holding a first mortgage on their residence.

[3]This subsection provides:

(g) Notwithstanding any other provision of this section, no
individual or family farmer may be a debtor under this title who
has been a debtor in a case pending under this title at any time in
the preceding 180 days if--
                                    ***
(2) the debtor requested and obtained the voluntary dismissal of the
case following the filing of a request for relief from the automatic
stay provided by section 362 of this title.

From the documentary evidence, it appears that Gilpin had obtained a judgment in mortgage foreclosure against Mr. and Mrs. Boates and had scheduled a sheriff sale of the realty for March 18, 2005.  Ex. M-4.  Mr. and Mrs. Boates filed an emergency petition with the state court on March 17, 2005, seeking to postpone this sale until May 20, 2005.  Ex. M-3.  In their emergency state court petition, the former debtors asserted that if the foreclosure sale were delayed, they would liquidate a retirement account owned by Mrs. Boates, as well as sell their timeshare interest in Florida property.  Ex. M-4.  The sale and liquidation of these assets, they alleged, would be sufficient to cure in large part any mortgage default owed to Gilpin (estimated in their petition to be $25,500).  Ex. M-4, ¶¶ 13-15.  Alternatively, the former debtors asserted in their state court emergency petition that they could refinance their real property and repay Gilpin in full.  Id., ¶ 17.

This emergency petition resulted in the postponement of the foreclosure sale until April 15, 2005.   On that date, the state court held a hearing to determine if any further postponement of the foreclosure sale were warranted.  At the conclusion of the April 15th hearing, the state court agreed to postpone the foreclosure sale until May 20, 2005, as requested by the petitioners.

While the April 15th sale date was still within the time period during which Mr. and Mrs. Boates were barred from filing bankruptcy petitions, the May 20th date was outside the 180 day period.  Apparently, this concerned the state court, for in issuing an order granting a further postponement of the foreclosure sale to May 20th (without the necessity for further notice or advertising), the state court added the following language to its order dated April 15th:

> Defendants [Mr. and Mrs. Boates] agree that they will extend
> the 180 day prohibition for filing any further bankruptcy by an
> add'l 30 days which will extend such prohibition beyond May
> 20, 2005 and that they will not file any further [state court]
> petition to postpone the May 20, 2005 sale.  Defendants shall
> sign all documents to implement above when presented for
> signature.

Ex. M-5.

 Although Mr. and Mrs. Boates obtained the desired postponement, they were unable to liquidate assets sufficient to repay Gilpin.  Mrs. Boates maintains that no documents related to the April 15th postponement were sent to her for signing until May 18, 2005.  By that time, she filed the above-captioned chapter 13 bankruptcy petition.  Undeterred by this filing, Gilpin presented a copy of the April 15th order to the Sheriff of Delaware County, who proceeded with the foreclosure sale.  The debtor's residence was sold at auction on May 20, 2005.[4]   And on May 23, 2005, Gilpin filed the instant motion to annul the bankruptcy stay and thus validate this sale.

## II.

### A.

 In general, the filing of a bankruptcy case just prior to a foreclosure sale acts to stay that execution by virtue of section 362(a).  See, e.g., In re Ward, 837 F.2d 124

---

[4]There was no evidence offered concerning the identity of the purchaser at the auction sale.

4

(3d Cir. 1988). Thus, a foreclosure sale which occurs post-petition may be invalid as a violation of the bankruptcy stay. Id.

As noted above, Gilpin now seeks to have the bankruptcy stay "annulled." Section 362(d) permits the automatic stay to be "terminat[ed], annull[ed], modif[ied] or condition[ed]." The Third Circuit Court of Appeals has explained that "the inclusion of the word 'annulling' in the statute indicates a legislative intent to apply certain types of relief retroactively and validate proceedings that would otherwise be void ab initio." In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994). In a subsequent decision, the Court of Appeals provided the following analysis of the bankruptcy stay and the power of a bankruptcy court to retroactively terminate it:

> The purpose of the automatic stay is twofold: (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance "to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy;" and (2) to protect "creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." Maritime Elec. Co. v. United Jersey Bank, 959 F.2d [1194] at 1204 [3d Cir. 1991].
>
> The stay is "automatic" because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed. The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case. Id. A party in interest may obtain relief from stay, pursuant to § 362(d)(1), by requesting the relief from the bankruptcy court and, after notice and a hearing, showing cause. 11 U.S.C. § 362(d)(1).
>
> The automatic stay is of broad scope, directing that "[a]ll judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed." Maritime, 959 F.2d at 1203, 1206. Thus, "[o]nce triggered by a debtor's

bankruptcy petition, the automatic stay suspends any
non-bankruptcy court's authority to continue judicial
proceedings then pending against the debtor." <u>Id.</u> at 1206.
Unless relief from the stay is granted, the stay continues until
the bankruptcy case is dismissed or closed, or discharge is
granted or denied.  11 U.S.C. § 362(c).  Once a stay is in
effect, without relief from the bankruptcy court, "the parties
themselves [can]not validly undertake any judicial action
material to the ... claim against" the debtor.  <u>Id.</u> at 1207. <u>This
includes the filing of motions, which are void ab initio, unless
the bankruptcy court later grants retroactive relief.</u> [FN6] <u>Id.</u>
at 1207, n. 13.

> FN6. Generally, judicial actions and
> proceedings against the debtor are void ab initio
> absent relief from the stay.  <u>Id.</u>  We have,
> however, recognized that section 362(d), which
> requires the bankruptcy court to grant relief
> from the stay under certain circumstances and
> permits such relief to be applied retroactively,
> would allow the bankruptcy court to grant
> annulment of a stay, thereby making acts in
> violation of the stay voidable, rather than void
> ab initio.  <u>See In re Siciliano</u>, 13 F.3d 748,
> 750-51 (3d Cir. 1994).

<u>Constitution Bank v. Tubbs</u>, 68 F.3d 685, 691-92 (3d Cir. 1995) (emphasis added);

<u>accord</u>, <u>e.g.</u>, <u>Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.</u>, 157 F.3d 169,

172 (2d Cir. 1998).


                                    B.


       As mentioned earlier, Gilpin requests that the bankruptcy stay be annulled

under section 362(d)(1) in order to validate the sheriff sale that occurred on May 20,

2005, in technical violation of the stay.  In general, whether to grant relief from the

automatic stay under section 362(d)(1), including the decision whether to annul the stay,

6

is left to the discretion of the bankruptcy court.  See, e.g., In re National Environmental

Waste Corp., 129 F.3d 1052, 1054 (9th Cir. 1997).  In determining whether to exercise

such discretion and retroactively terminate the stay, courts have noted that annulment of

the stay is appropriate only in limited circumstances.  See, e.g., In re Stockwell, 262 B.R.

275, 280 (Bankr. D. Vt. 2001).  In order to help identify such circumstances, some courts

have focused upon the following two factors:

> (1) whether the creditor was aware of the bankruptcy petition;
> and (2) whether the debtor engaged in unreasonable or
> inequitable conduct, or prejudice would result to the creditor.

In re National Environmental Waste Corp., 129 F.3d at 1055.

Other courts, in analyzing the factors needed to justify annulling the stay,

parse these two factors into more specific elements:

> It is well recognized that a determination of whether to grant
> relief from stay retroactively is within the wide latitude of the
> Court with each decision being considered on a case-by-case
> basis. . . .  The party seeking retroactive lift stay relief has the
> burden of proving that the action taken in violation of the stay
> falls within the narrow exceptions to the rule voiding actions
> taken in violation of the stay. . . .  Similarly, under § 362(g),
> the debtor has the burden of proof with respect to showing
> equitable grounds for denying the requested relief. . . .
>
> In order to determine whether the circumstances are
> sufficiently compelling to warrant nunc pro tunc lift stay
> relief, courts have considered a variety of factors:
>
>> (1) if the creditor had actual or constructive
>> knowledge of the bankruptcy filing and,
>> therefore, of the stay; (2) if the debtor has acted
>> in bad faith; (3) if there was equity in the
>> property of the estate; (4) if the property was
>> necessary for an effective reorganization; (5) if
>> grounds for relief from the stay existed and a
>> motion, if filed, would likely have been granted
>> prior to the automatic stay violation; (6) if
>> failure to grant retroactive relief would cause

> unnecessary expense to the creditor; and (7) if
> the creditor has detrimentally changed its
> position on the basis of the action taken.

In re Stockwell, 262 B.R. at 280-81 (citations omitted); see also In re Williams, 257 B.R. 297, 301 (Bankr. W.D. Mo. 2001).

In sum, courts have generally concluded that annulment of the stay should be limited to circumstances demonstrating "unfair prejudice" to a creditor, including consideration whether the creditor seeking annulment had a valid legal basis for lifting the automatic stay at the time that the challenged action occurred, but failed to request such relief because it was unaware of any bankruptcy filing. See In re Syed, 238 B.R. 126, 133 (Bankr. N.D. Ill. 1999). In addition, because a creditor may obtain relief from the bankruptcy stay for "cause" under section 362(d)(1) whenever the evidence presented would support dismissal of the case due to a bad faith filing, see, e.g., In re Can-Alta Properties, Ltd., 87 B.R. 89, 91 (B.A.P. 9th Cir. 1988) (and cases cited); In re Harris, 192 B.R. 334, 337 (Bankr. W.D.N.Y. 1996); Matter of Nelson, 66 B.R. 231 (Bankr. D.N.J. 1986), aff'd without op., 838 F.2d 1207 (3d Cir. 1988); In re Augustus Court Associates, 43 B.R. 352, 354 (Bankr. E.D. Pa. 1984), it also follows that a court should consider the good faith of a bankruptcy filing when determining the appropriateness of granting annulment relief under section 362(d)(1).

Indeed, Gilpin raises that very issue of good faith in this contested matter. It argues that the May 18, 2005, bankruptcy filing by Mrs. Boates was done in bad faith because: she had agreed to extend the prohibition against filing for bankruptcy relief beyond May 20th; her agreement to extend the bar date was incorporated into a state court

8

order; and her agreement to extend the bar resulted in the state court's postponement of the foreclosure sale.

Outside the specific context of annulment, the Third Circuit Court of Appeals explained that the determination of whether a chapter 13 case was commenced in good faith must be left to the discretion of the bankruptcy court, and is based upon the "totality of the circumstances." The appellate court enumerated certain factors as relevant to this good faith analysis:

> As the Seventh Circuit has noted, however, "good faith is a term incapable of precise definition." In re Love, 957 F.2d [1350] at 1355 [7th Cir. 1992]. As a result, we believe that "the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court." Id. We therefore join the Seventh, Ninth and Tenth Circuits in holding that the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances. In re Love, 957 F.2d at 1355; In re Gier, 986 F.2d [1326] at 1329 [9th Cir. 1994]; In re Eisen, 14 F.3d [369] at 470 [10th Cir. 1993]. Factors relevant to the totality of the circumstances inquiry may include, among others, the following: the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. In re Love, 957 F.2d at 1357.

In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996); see, e.g., In re Privitera, 2003 WL 21460027 (Bankr. E.D. Pa. 2003).

Thus, in considering whether the facts presented justify annulling the bankruptcy stay, I shall consider whether the debtor acted in good faith in filing her bankruptcy petition on May 18th in order to prevent the May 20th foreclosure sale.

C.


Before doing so, I note that had the debtor filed her present bankruptcy case

within the 180 day bar established by section 109(g)(2), she would have been ineligible

for chapter 13 relief, which ineligibility would also support annulment of the bankruptcy

stay.  See In re Casse, 198 F.3d 327 (2d Cir. 1999).  In this instance, however, the 180 day

bar order issued by this court expired on May 9th, prior to May 18th, the date this

bankruptcy case commenced.

Gilpin argues, nonetheless, that the state court's April 15th order validly

extended that prohibition, thus rendering the debtor's bankruptcy filing invalid.  In so

arguing, however, Gilpin concedes that an individual cannot validly contract with a

creditor to prohibit her future bankruptcy filing.  See Fallick v. Kehr, 369 F.2d 899, 904

(2d Cir. 1966) ("We agree, as the dissent points out, that an advance agreement to waive

the benefits of the [Bankruptcy] Act would be void."); In re Weitzen, 3 F. Supp 698

(S.D.N.Y. 1933) ("The agreement to waive the benefit of bankruptcy is unenforceable.").

Gilpin further acknowledges that a state court cannot validly bar a party from filing a

future bankruptcy case.  See In re Madison, 184 B.R. 686, 691 (Bankr. E.D. Pa. 1995)

("We do mean to express a belief that any attempt on the part of a non-bankruptcy court

to restrict or limit a bankruptcy filing is void.") (dicta).

Notwithstanding, Gilpin maintains that this particular state court order is

enforceable because it only extended a pre-existing bar order in return for postponement

of the foreclosure sale, and was entered with the debtor's agreement.  Thus, the movant

contends that the debtor was ineligible to file a bankruptcy petition on or before May

10

20th.  See generally Kuo v. Walton, 167 B.R. 677 (M.D. Fla. 1994); In re Stuart, 297 B.R.

665 (Bankr. S.D. Ga. 2003).

The debtor's position in this contested matter focuses upon the particular

language of the April 15th order.  She concedes that, in these circumstances, the state

court order could validly extend the 180 day bar date.  She maintains, however, that the

order did so in this instance only upon her signing documents to that effect.  As no such

documents were signed by her, the debtor maintains that extension of the 180 day bar did

not occur.

The chapter 13 trustee found the debtor's position at the hearing

unpersuasive.  As he interpreted the April 15th order, any documents signed by Gilpin

and the debtor would simply memorialize their agreement to extend the bar date.

Therefore, the trustee agrees with Gilpin and concludes that the debtor was indeed barred

from filing her latest bankruptcy case.

I agree with the trustee's construction of the April 15th order.  The state

court did not intend for the thirty-day extension of the prohibition against future

bankruptcy filings to be conditioned upon Mrs. Boates' signing of a document.  However,

since the only relief sought by Gilpin is the annulment of the bankruptcy stay, rather than

dismissal of this case, I need not decide whether Mrs. Boates was eligible for bankruptcy

relief on May 18th.  One may be eligible to file a bankruptcy petition under section 109

and yet file a bad faith chapter 13 petition.  See generally In re Lilley.

If I assume arguendo that Mrs. Boates were eligible for chapter 13 relief on

May 18, 2005, I hold, based upon the totality of the circumstances, that the debtor did not

file this bankruptcy petition in good faith, and that principles of estoppel as well as the

11

better exercise of discretion support the annulment of the bankruptcy stay, so as to

validate the May 20th foreclosure sale.

I reach that conclusion for the following reasons.

III.

A.

While it is generally accepted that a prepetition contractual provision by

which one party promises not to seek bankruptcy relief is unenforceable as a matter of

public policy, see 2 Collier on Bankruptcy, ¶ 301.08, at 301-16 (15th ed. rev. 2004),

courts are divided over whether a party can contractually relinquish certain bankruptcy

law protections, such as the automatic stay.  See generally In re Desai, 282 B.R. 527, 530

(Bankr. M.D. Ga. 2002) (and cases cited).  There are circumstances where such a promise

will be upheld:

> Courts have frequently upheld the right of a debtor, however,
> to waive its rights to the section 362 automatic stay,
> particularly when the debtor is a single asset real estate entity
> and the waiver was made in the context of a prepetition
> workout agreement.

2 Collier on Bankruptcy, ¶ 301.08[1], at 301-18 n.10 (citations omitted).

Similarly, once an entity files a bankruptcy petition, it is generally

understood: "Because the automatic stay serves the interests of both debtors and creditors,

it may not be waived and its scope may not be limited by a debtor."  Maritime Elec. Co.,

Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991).  Nevertheless, conduct

12

by the debtor may effectively waive the stay as to a particular creditor. Thus, if a debtor/defendant permits a postpetition trial to occur in a non-bankruptcy forum by never notifying the court or the opposing party of her pending bankruptcy case, the debtor will not be able to void an unsuccessful outcome of the trial by later asserting that the bankruptcy stay made the trial invalid. See, e.g., Roseman v. Roseman, 14 F.3d 602 (Table), 1993 WL 513899, at *3 (6th Cir. 1993); In re Calder, 907 F.2d 953, 956-57(10th Cir. 1990).

Thus, in appropriate circumstances, estoppel principles can bar the debtor's invocation of bankruptcy rights, such as the protection of the bankruptcy stay or the discharge injunction. See In re Johnston, 321 B.R. 262, 286 (D. Ariz. 2005) (upon remand, the bankruptcy court should consider the affirmative defense of judicial estoppel and waiver to debtor's claim that the automatic stay was violated); In re Davis, 244 B.R. 776, 794-95 (Bankr. N.D. Ill. 2000) (debtor equitably estopped from asserting that creditor violated the bankruptcy stay); In re Raanan, 181 B.R. 480 (Bankr. C.D. Cal. 1995) (same); see also In re Inmon, 208 B.R. 455, 458 n.2 (Bankr. E.D. Ark. 1996) (judicial estoppel could bar the debtor's claim of a homestead exemption). Indeed, there are numerous reported decisions applying principles of equitable estoppel or judicial estoppel based upon the conduct of the debtor. See generally Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp, 337 F.3d 314, (3d Cir. 2003); In re Raanan, 181 B.R. at 484 ("The principle of equitable estoppel applies in bankruptcy-related matters.").

In essence, Gilpin contends in this contested matter that the related doctrines of equitable and judicial estoppel either render the instant chapter 13 case in bad

faith or constitute a waiver of the bankruptcy stay due to conduct of the debtor.  Upon

consideration of the evidence presented, I concur with this contention.


B.


The Third Circuit Court of Appeals has identified three elements that

constitute equitable estoppel:

> Parties claiming equitable estoppel must establish that (1) a
> representation of fact was made to them, (2) upon which they
> had a right to rely and did so rely, and (3) that the denial of
> the represented fact by the party making the representation
> would result in injury to the relying party.

Wheeling-Pittsburgh Steel Corp. v. McCune, 836 F.2d 153, 162-63 (3d Cir. 1987); see In

re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996) ("One species of equitable

estoppel is promissory estoppel, which may be applied where there has been a clear and

unambiguous promise, reasonable and foreseeable reliance on the promise, and an

unconscionable injury as a result of the reliance.").

Equitable estoppel  "focuses on the relationship between the parties,"

Delgrosso v. Spang and Co., 903 F.2d 234, 241 (3rd Cir. 1990), and "may be applied to

preclude a party from contradicting testimony or pleadings successfully maintained in a

prior judicial proceeding."  Konstantinidis v. Chen, 626 F.2d 933, 937 (D.C. Cir. 1980).

In general

> [t]he party seeking to invoke the estoppel, however, must
> have been an adverse party in the prior proceeding, must have
> acted in reliance upon his opponent's prior position, and must
> now face injury if a court were to permit his opponent to
> change positions. . . . The privity, reliance, and prejudice
> requirements demonstrate that the doctrine is designed to

> ensure fairness in the relationship between the parties. As
> Professor Pomeroy states, the rule's "object is to prevent the
> unconscientious and inequitable assertion or enforcement of
> claims or rights which might have existed or been enforceable
> by other rules of law, unless prevented by the estoppel." 3
> Pomeroy's Equity Jurisprudence § 802 (5th ed. 1941). The
> party seeking the protection of the estoppel is the intended
> beneficiary of the doctrine, for "its practical effect is, from
> motives of equity and fair dealing, to create and vest opposing
> rights in the party who obtains the benefit of estoppel." Id.

Id., at 937 (citations omitted).

Although similar to equitable estoppel in its limitation upon inconsistency,

id., at 937, judicial estoppel "focuses on the relationship between the litigant and the

judicial system, and seeks to preserve the integrity of the system." Delgrosso v. Spang and

Co., 903 F.2d at 241.  As explained by the Supreme Court:

> "[W]here a party assumes a certain position in a legal
> proceeding, and succeeds in maintaining that position, he may
> not thereafter, simply because his interests have changed,
> assume a contrary position, especially if it be to the prejudice
> of the party who has acquiesced in the position formerly taken
> by him." Davis v. Wakelee, 156 U.S. 680, 689 . . . (1895).
> This rule, known as judicial estoppel, "generally prevents a
> party from prevailing in one phase of a case on an argument
> and then relying on a contradictory argument to prevail in
> another phase." Pegram v. Herdrich, 530 U.S. 211, 227, n. 8
> (2000) . . . .
>
> Although we have not had occasion to discuss the doctrine
> elaborately, other courts have uniformly recognized that its
> purpose is "to protect the integrity of the judicial process,"
> Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 ([6th Cir.]
> 1982), by "prohibiting parties from deliberately changing
> positions according to the exigencies of the moment," United
> States v. McCaskey, 9 F.3d 368, 378 ([5th Cir.] 1993). . . .
> Because the rule is intended to prevent "improper use of
> judicial machinery," Konstantinidis v. Chen, 626 F.2d 933,
> 938 (C.A.D.C. 1980), judicial estoppel "is an equitable
> doctrine invoked by a court at its discretion," Russell v. Rolfs,
> 893 F.2d 1033, 1037 ([9th Cir.]1990) (internal quotation
> marks and citation omitted).

15

> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," Allen [v. Zurich Ins. Co.], 667 F.2d [1162] at 1166. . . . Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. United States v. Hook, 195 F.3d 299, 306 ([7th Cir.] 1999). . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," Edwards, 690 F.2d at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," United States v. C.I.T. Constr. Inc., 944 F.2d 253, 259 ([5th Cir.] 1991), and thus poses little threat to judicial integrity. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. . . .

New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001) (citations omitted).

As instructed by the Third Circuit Court of Appeals, not every inconsient position taken by a litigant will justify the application of judicial estoppel.  There are two prongs to the inconsistent position requirement:

> The third issue that Ryan raises on appeal is whether Ryan has in fact asserted inconsistent positions within the meaning of the judicial-estoppel doctrine. This entails a two-part inquiry: (1) is Ryan's present position inconsistent with a position it asserted in its Chapter 11 proceedings; and (2) if so, did Ryan assert either or both of the inconsistent positions in bad faith--i.e., with intent to play fast and loose with the court. Only if both prongs are satisfied is judicial estoppel an appropriate remedy.

Ryan Operations v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir. 1996).

Thus, judicial estoppel is not triggered whenever a party asserts inconsistent positions within litigation:

16

> Asserting inconsistent positions does not trigger the
> application of judicial estoppel unless "intentional
> self-contradiction is . . . used as a means of obtaining unfair
> advantage." Scarano [v. Central R. Co.], 203 F.2d [510] at
> 513. Thus, the doctrine of judicial estoppel does not apply
> "when the prior position was taken because of a good faith
> mistake rather than as part of a scheme to mislead the court."
> Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980).
> An inconsistent argument sufficient to invoke judicial
> estoppel must be attributable to intentional wrongdoing. See
> Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428 (7th
> Cir. 1993); see also Total Petroleum, Inc. v. Davis, 822 F.2d
> 734 (8th Cir. 1987) (holding that the doctrine only applies to
> deliberate inconsistencies that are "tantamount to a knowing
> misrepresentation to or even fraud on the court.").

Id., at 362-63.

I am also cognizant that a "court may not employ judicial estoppel unless it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001) (quoting Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 108 (3d Cir. 1999)).

C.

The proven facts in this contested matter justify the imposition of these related estoppel principles to annul the bankruptcy stay.

First, the debtor and her husband, both of whom were statutorily barred from filing a bankruptcy petition on April 15, 2005, faced the prospect of an imminent foreclosure sale. Second, they had petitioned the state court to postpone the sale so as to afford them the opportunity to obtain funds to repay Gilpin. Third, just prior to the

17

scheduled foreclosure sale, the state court granted that request and postponed the sale

until May 20th, a date consistent with their request, Ex. M-4, but only upon the express

condition, to which Mr. and Mrs. Boates consented, that neither petitioner could file any

bankruptcy case or additional state court petition to delay further the May 20th sale.

Fourth, Gilpin, who may have also consented to that postponement, clearly accepted it

and did not seek appellate review.  Fifth, had Mr. and Mrs. Boates declined to consent to

the extension of the bar order, it appears likely that the foreclosure sale would have taken

place on April 15th.  Sixth, Mr. and Mrs. Boates were unable to obtain the necessary

funds to satisfy Gilpin's claim by the May 20th deadline.  Seventh, despite their

representation to the contrary, another bankruptcy petition was filed on May 18th to stay

the forthcoming foreclosure sale.

> This breach of representation to the state court, relied upon by Gilpin and
the state court, triggers the principles of judicial and/or equitable estoppel.  See
Donaldson v. Bernstein, 104 F.3d 547, 556 (3d Cir. 1997) ("With respect to the situation
here, even if we assume that a bankruptcy disclosure statement is not enforceable as a
contract, it is at least a representation which in appropriate circumstances can serve as the
basis for judicial estoppel."); In re Captain Blythers, Inc., 311 B.R. 530, 538 (B.A.P. 9th
Cir. 2004) ("We conclude that debtor is judicially estopped from taking a position which
is inconsistent with prior statements made to secure plan confirmation. . . ."); see also In
re Raanan, 181 B.R. at 485 ("Application of equitable estoppel is appropriate where a
bankruptcy debtor's intentional failure to provide the required notice results in the
unsuspecting creditor proceeding with litigation at significant additional cost of time and
money.").

I am aware that there is a reported decision, <u>In re Avalon Hotel Partners, LLC</u>, 302 B.R. 377 (Bankr. D. Or. 2003), that suggests a different conclusion. <u>Id.</u>, at 383 ("Applying judicial estoppel to grant AHD's Motion to Dismiss and in effect to preclude AHP from filing for bankruptcy protection would be analogous to upholding a covenant not to file bankruptcy. Courts appear universally to find such covenants unenforceable."). However, the relevant facts surrounding the <u>Avalon</u> decision are different from those in this dispute in two significant ways.

The debtor in <u>Avalon</u> was a limited liability corporation, some of whose owners were involved in a dispute concerning the operation of the corporate assets. One interest holder, Avalon Hotel Developer, LLC ("AHD"), sought to dissolve the corporation through state court litigation "and invoke[] the auction buy-out provisions." <u>Id.</u>, at 379. An auction was conducted at which AHD was the successful bidder. <u>Id.</u>, at 380. One or more unidentified parties thereafter sought an extension of time from the state court until September 15, 2003 to complete the auction sale, and such request was granted by the state court "only after soliciting and receiving assurances that [Avalon] would not file a bankruptcy petition prior to 5:00 P.M. on September 15, 2003." <u>Id.</u>, at 380.[5] Despite this promise, the corporation filed a chapter 11 petition at 2:47 P.M. on September 15, 2003. <u>Id.</u>, at 379. Presumably, this filing stayed AHD from purchasing the debtor's assets, because almost immediately thereafter AHD sought to dismiss the

---

[5]The reported decision does not identify who sought the extension to complete the sale; it only explains that "documentation issues and controversies relating to the scope of releases extended closing. . . ." <u>Id.</u>, at 380. Typically, it is the buyer who needs more time to close, not the seller. Thus, the context for the corporation's promise not to file a bankruptcy petition prior to the extended closing deadline is not clear.

bankruptcy case as filed in bad faith, due to the debtor's breach of its state court promise. Id., at 380.

The Oregon bankruptcy court denied the motion to dismiss, concluding that the corporate promise not to file a bankruptcy petition was unenforceable, id., at 383, and that the bankruptcy petition was not in bad faith because the chapter 11 case would "maximize value" of the debtor's assets for the benefit of all creditors and interest holders.  Id., at 384-85.

First, unlike the debtor in this dispute, the corporate debtor in Avalon had not previously filed a bankruptcy case, nor had it been barred from future filings.  Thus, when the Avalon debtor promised in state court not to file a bankruptcy petition, it had the option to refrain from tendering such a promise and immediately file for chapter 11 relief. It is important to note that Mrs. Boates did not have that same choice.  Had she declined to extend the bar deadline against refiling, the foreclosure sale would likely have occurred.

In other words, there is a material difference between a promise not to file a bankruptcy petition and an agreement to extend an existing bar against future filings. This distinction is especially warranted in these circumstances, because the purpose behind the 180 bar provision of section 109(g)(2) was to afford the mortgagee sufficient time to complete the foreclosure process.  See In re Richardson, 217 B.R. 479, 492 (Bankr. M.D. La. 1998) ("Six months should be ample time for all but the most somnolent creditors to enforce their rights.").  Here, that execution process would have been completed within the six month statutory period, but for the debtor's successful petition for a postponement, conditioned upon her agreement to extend the prohibition.

20

Second, in <u>Avalon</u>, the bankruptcy court was persuaded that parties not involved in the state court litigation would benefit from the chapter 11 case. It was concerned that enforcement of the debtor's promise and dismissal of the chapter 11 case would harm corporate creditors and interest holders that were not involved in the earlier state court dispute and auction, and therefore were unaware of and never relied upon the corporation's promise made in state court.

In this chapter 13 case, Mrs. Boates' bankruptcy filing was intended to save her home from foreclosure, not to maximize its sale value for the benefit of her creditors. If her agreement to extend the bar made in state court is invalidated, she benefits. And, as noted above, Gilpin probably relied upon this promise.

Accordingly, Mrs. Boates' recent bankruptcy petition, filed in contravention of estoppel principles, constitutes a bad faith filing. Alternatively, estoppel should preclude her from obtaining the protection of the bankruptcy stay. And while it would have been preferable for Gilpin to have sought emergency relief in this court, rather than proceeding with the Sheriff sale on May 20th, on balance annulment of the stay is justified. <u>See</u> <u>generally</u> <u>In re Raanan</u>, 181 B.R. at 486 (application of equitable estoppel warranted annulment of the automatic stay). This relief, which does not dismiss this bankruptcy case, is tailored to address the harm done to Gilpin and the state court process by the debtor's inconsistent representations.

An appropriate order shall be entered.

21

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                 :    Chapter 13

SUSAN MAE BOATES                                       :

         Debtor                        :    Bankruptcy No. 05-17077F

.................................................

## ORDER

.................................................

AND NOW, this 6th day of July 2005, for the reasons stated in the accompanying memorandum, it is hereby ordered that the bankruptcy stay is retroactively terminated in favor of Gilpin, Van Trump & Montgomery, Inc. pursuant to 11 U.S.C. § 362(d)(1) to May 20, 2005, just prior to the Sheriff sale of the real property located at 1024 Langley Street, Trainer, Pennsylvania.   The movant can exercise its state law rights to record a Sheriff's deed for the real property.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Mrs. Susan Mae Boates
1024 Langley Street
Trainer, PA 19061

Kenneth S. Medzie, Esq.
204 E. Chester Pike
P.O. Box 378
Ridley Park, PA 19078

22

Leslie E. Puida, Esq.
Mellon Independence Center
701 Market Street
Suite 5000
Philadelphia, PA 19106-1532

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall
Suite 583
Philadelphia, PA 19106